UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| DEUTSCHE BANK NAT'L TRUST CO., as Trustee of the Residential Asset Securitization Trust 2007-A8, Mortgage Pass-Through Certificates, Series 2007-H under the Pooling and Servicing Agreement dated June 1, 2007, <br><br> *Plaintiff*, <br><br> v. <br><br> JOHN BURKE and JOANNA BURKE, <br><br> *Defendants*. | § § § § § § § § § § § § § § § § | CIVIL ACTION 4:11-CV-01658 |

## MEMORANDUM AND ORDER

Before the court is plaintiff Deutsche Bank National Trust Company's Rule 59(e) motion to alter or amend the court's judgment in this home equity loan foreclosure case. (Dkt. 84). A hearing on this motion was held on June 29, 2015, and Deutsche Bank was given an opportunity to file a supplemental brief. (Dkt. 90). Deutsche Bank asks the court to vacate its March 13, 2015 final declaratory judgment in favor of the Burkes. (Dkt. 77).

That judgment was based on findings and conclusions that Deutsche Bank had failed to prove chain of title back to the original lender, now defunct. The sole proof on which the bank relied – a purported assignment from "MERS as nominee for the lender, its successors and assigns"–was held void, because the assignor did not exist when the document was signed.  Deutsche Bank's motion raises five arguments, which will be considered in turn. The motion is denied.

*1.     Holder of the Note*

Deutsche Bank's first argument is based on a misrepresentation of the trial record. Deutsche Bank claims that it introduced into evidence the Burke note indorsed in blank by the original lender (IndyMac Bank), thereby establishing its right to foreclose as holder of the Note. (Dkt. 84, at 4). This claim is baseless, because, as the trial transcript makes clear, the only version of the Note successfully introduced by Deutsche Bank at trial contained no indorsement of any kind.

It is true that a version of the Note originally offered by Deutsche Bank as Plaintiff's Exhibit 3 contained an undated stamp block below the borrower's signature, which reads "Pay to the Order Of [left blank] Without Recourse IndyMac Bank, F.S.B." and is signed by "Cathy Powers Vice President." (Dkt. 69, at 30). At trial, the defendants vigorously objected to this document (as well as others) on lack of authentication grounds. Tr. 6-12, 29-30. The Burkes argued that the stamp block containing the Cathy Powers signature was not a part of the Note as originally executed, and instead offered a copy of the unindorsed Note as one of their own exhibits, Defendants' Exhibit 11.  Prior to taking testimony, the Court sustained the defendants' authenticity objections to all of Deutsche Bank's exhibits other than Exhibits 1 and 2, which were certified copies of the Home Equity Security Instrument and the Assignment, respectively. Tr. 34 ("Your Exhibit 1 and 2 are admitted. But your other exhibits, the ones that are not authenticated at this point are not."). Thus, from the very

beginning of trial, Deutsche Bank's counsel was on notice that if it wanted to introduce its version of the Note indorsed in blank, some proof of authentication would be necessary.[1]

Deutsche Bank never offered such proof at trial; in fact it called no witnesses of its own, aside from the Burkes themselves. At the close of the Bank's counsel's examination of Joanna Burke, the following exchange occurred with the Court:

> MR. JACOCKS: Okay. I don't have any further questions for her. I offer my copy of the note and my copy of the Notice of Acceleration that was sent to Joanna Burke at the property address into evidence as Exhibits 2 and 3 – I mean 3 and 4.
> THE COURT: Well, you didn't ask her about your Exhibits 3 and 4.
> MR. JACOCKS: Exhibit 3 was the note and I did ask her several questions–
> THE COURT: About that document? I didn't hear you say anything about Plaintiff's Exhibit 3 or Plaintiff's Exhibit 4, and that's what I'm concerned about.
> MR. JACOCKS: Okay.
> THE COURT: Because I know we have overlap, but when you talk about one set of exhibits and ask questions about that, and now you're moving to introduce another set of exhibits, I'm afraid that's going to confuse the record, because I'm confused at this point.
> MR. JACOCKS: *I'll unconfuse it. I'll offer their Defendant's Exhibit 4 into evidence, as well as their copies of the note into evidence –*
> THE COURT: *Okay.*
> MR. JACOCKS:  *– as Exhibit 3 is for the note.* And if there are multiple copies the next number will be 4. And the acceleration is also part of what they're – they've sought to have admitted into evidence.
> THE COURT: All right. So your Plaintiff's Exhibit 3 is where, what exhibit number for the defendants?
> MR. JACOCKS: I need the binder back.
> THE COURT: Okay, go ahead.
> MR. JACOCKS: *The note is in plaintiff's binder and it's Exhibit – Defendant's Exhibit No. 11.*

---

[1] Actually, Deutsche Bank should have anticipated this issue well before trial, because its motion for summary judgment was denied on this very ground. *Deutsche Bank Nat'l Trust Co. v. Burke*, No. 4:11-cv-01658, 2014 WL 4649879 (S.D. Tex. Sept. 16, 2014).

>    THE COURT: All right.
>    MR. JACOCKS: And again, the only objection I have to that entire – to that entire offering to them is that last page.
>    THE COURT: The last sheet, I understand. Okay. So it's in – okay. *So your Plaintiff's Exhibit 3 is that portion of Defendant's Exhibit 11 that consists of the note dated May 21, 2007?*
>    MR. JACOCKS: *That's correct.*
>
>    \*   \*   \*
>    THE COURT: . . . Plaintiff's Exhibit 3 is admitted.

Tr. 45-48 (emphasis added).

In other words, the bank's counsel withdrew its original Exhibit 3–i.e., the Note with the blank indorsement–and substituted in its place a revised Exhibit 3 taken from Defendants' Exhibit 11–i.e., the Note minus any indorsement. This absence of documentary proof mirrors the lack of any testimonial evidence of holder status. Given its utter failure of proof, Deutsche Bank's continuing assertion of a right to foreclose as holder of the Note is not just groundless, it is frivolous. On this trial record the current holder of the Burke Note remains a mystery.[2]

2.   *The* L'Amoreaux *Decision*

In its second argument, Deutsche Bank relies upon the Fifth Circuit's recent foreclosure decision in *L'Amoreaux v. Wells Fargo Bank, N.A.*, 755 F.3d 748 (5th Cir. 2014).

---

[2] At oral argument on this motion, the Bank's counsel asserted that the Note was registered on the MERS system, which electronically tracks note transfers among MERS-member banks and entities, and that any interested party could log on to the MERS website to determine which entity owns the note. *See Harris County v. MERSCORP Inc.*, No. 14-10392, 2015 WL 3937927, at *1 (5th Cir. June 26, 2015) (describing MERS tracking system for note assignments). Deutsche Bank's failure to offer any such readily available chain-of-title evidence from the MERS registry is therefore especially telling. If those records supported the Bank's claim, they presumably would (and should) have been presented to this Court long ago.

4

In that case the homeowner challenged the validity of a deed of trust assignment from MERS to Wells Fargo, on the grounds that MERS was purporting to act as a nominee only for the original lender (Cornerstone), which had ceased to exist at the time of the assignment. Rejecting that challenge, the Fifth Circuit explained:

> Although Cornerstone had ceased to exist at the time of the assignment, the Deed of Trust explicitly contemplates MERS's continuing to act as nominee for Cornerstone's "successors and assigns." It is undisputed that Cornerstone Corporation endorsed the Note to Wells Fargo [prior to Cornerstone's demise]. At that point, MERS became a nominee for Wells Fargo. MERS thus continued to have the authority to assign its rights under the Deed of Trust.

755 F.3d at 750.[3]

Thus, the critical fact in *L'Amoreaux* was the prior indorsement of the note to Wells Fargo. Based on that earlier transaction, Wells Fargo became Cornerstone's "assign," and MERS thereby acquired the authority to act as nominee for that entity in transferring the Deed of Trust. In this case, however, that critical element is missing. As shown above, Deutsche Bank introduced no proof whatever of a prior transaction by which it acquired any rights in the Note. Absent such proof, *L'Amoreaux* is not controlling. Here MERS was acting on behalf of a defunct entity (IndyMac Bank), and its purported assignment was therefore void and invalid under the Texas common law of assignments, as explained below.

An assignment is a manifestation by the owner of a right to transfer such right to the assignee. *Hermann Hosp. v. Liberty Life Assur. Co.,* 696 S.W.2d 37, 44 (Tex. App. – Houston [14th Dist.] 1985). An existing right is a precondition for a valid assignment. *Pain*

---

[3] In a footnote, the Court observed that "the assignment of the Note independently provided authority for Wells Fargo to foreclose." 755 F.3d at 750 n.1.

*Control Institute, Inc. v. GEICO Gen. Ins. Co.,* 447 S.W. 3d 893, 899 (Tex. App. – Dallas 2014). An assignee "stands in the shoes" of the assignor but acquires no greater right than the assignor possessed. *John H. Carney & Assocs. v. Texas Prop. & Cas. Ins. Guar. Ass'n,* 354 S.W. 3d 843, 850 (Tex. App. – Austin 2011). An assignment cannot be made by a dead man; it is a transfer by one existing party to another existing party of some valuable interest. *Pool v. Sneed,* 173 S.W.2d 768, 775 (Tex. Civ. App. – Amarillo 1943).

These common law principles pose an insurmountable barrier for Deutsche Bank on this record. There is simply no proof of an existing assignor with an existing right in the property capable of being assigned in 2011. It is undisputed that IndyMac Bank had been "dead" since 2008, several years prior to the 2011 assignment. (P.Ex. 6, at p.1). Thus, any post-mortem transaction by that entity would be a nullity under *Pool v. Sneed*.[4]

Deutsche Bank fares no better under the "successors and assigns" clause. The only apparent "successor" to IndyMac Bank was IndyMac Federal Bank, but that entity was likewise shuttered in March 2009, nearly two years before the 2011 assignment. (P.Ex. 6). Even had that entity survived to 2011, substantially all of its assets had already been disposed of by that time. According to the FDIC notice admitted as Plaintiff's Exhibit 6, "On March 19, 2009, IndyMac Federal was placed in receivership and substantially all of its assets were

---

[4] The court recognizes that this conclusion may be in tension with some federal district court cases cited in the bank's motion. Such cases are not binding precedent, unlike the Texas appellate decisions cited above. Moreover, federal trial court opinions lack persuasive power in a diversity case governed by substantive state law, unless they directly engage and distinguish contrary state court precedent. For these reasons, this court respectfully declines to consider them in depth. *See Miller v. Homecomings Financial, LLC,* 881 F.Supp.2d 825, 831 (S.D. Tex. 2012).

6

sold." (Id. at p.4)  To whom those assets were sold, and whether the Burke Note was among those assets, are matters of sheer speculation on this record.[5] *See Priesmeyer v. Pacific Southwest Bank, F.S.B.*, 917 S.W.2d 937, 940 (Tex. App. – Austin 1996) (refusing to presume that note once held by failed bank was among unspecified assets transferred to FSLIC and then to new bank).  For all this record shows, there was no existing "successor" to IndyMac Bank at the time of the 2011 assignment.

That leaves only the question of IndyMac Bank "assigns." Logically, there are only two possibilities here, neither of which are any help to Deutsche Bank: either there was no assignee, in which case the 2011 assignment is necessarily void for reasons already given; or, there was an assignee, in which case there is necessarily *another, prior* assignment not found in this record. In other words, the 2011 assignment would merely be the last link in a chain of title consisting of at least two (and possibly more) links.  If indeed there is such a gap in the chain of "assigns," Deutsche Bank's claim fails under Texas assignment law. *See e.g. Pain Control Institute, Inc. v. GEICO,* 447 S.W.3d at 899 (an existing right in the assignor is a precondition for a valid assignment); *Leavings v. Mills,* 175 S.W.3d 301, 310 (Tex. App. – Houston [1st Dist.] 2004) (party seeking to enforce note must show "unbroken chain of assignments" to the original mortgagee); *Jernigan v. Bank One, Texas, N.A.,* 803

---

[5]  Elsewhere the FDIC notice states that all deposits of IndyMac Federal were transferred to OneWest Bank FSB. But the record is silent whether OneWest bought any other assets of IndyMac Bank, in particular the Burke Note or Deed of Trust. (P.Ex. 6, at p. 1). No party to this litigation has claimed that OneWest was a "successor" to the lender.

S.W.2d 774, 777 (Tex. App. – Houston [14th Dist.] 1991) ("possibility of an intermediate transfer" precludes judgment as a matter of law concerning bank's capacity to sue on note).

Although not specifically raised or discussed in *L'Amoreaux,* there is yet another fatal flaw in Deutsche Bank's proof under Texas law. Even if some entity had been shown to be a "successor or assign" to the original lender, nothing in this record proves that MERS was a nominee or agent[6] for that particular entity. As the Texas Supreme Court has said, "Texas law does not presume agency, and the party who alleges it has the burden of proving it." *IRA Resources, Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007), citing *Buchoz v. Klein*, 184 S.W.2d 271, 271 (Tex. 1944).

Under Texas law, an agent is one who consents to the control of another, the principal, where the principal manifests consent that the agent shall act for the principal. *First Nat'l Acceptance Co. v. Bishop*, 187 S.W.3d 710, 714 (Tex. App. – Corpus Christi 2006). The party claiming agency must prove the principal has (1) the right to assign the agent's task and (2) the right to control the means and details by which the agent will accomplish the task. *Laredo Medical Group v. Lightner*, 153 S.W.3d 70, 72 (Tex. App. – San Antonio 2004); *Lyons v. Lindsey Morden Claims Mgmt., Inc.*, 985 S.W.2d 86, 90 (Tex. App. – El Paso 1998); *Schultz v. Rural/Metro Corp.*, 956 S.W.2d 757, 760 (Tex. App. – Houston [14th Dist.] 1997).

---

[6] In legal terms, a "nominee" is a kind of agent. *See* BLACK'S LAW DICTIONARY 1211 (10th ed. 2014) ("A person designated to act in place of another, usu. in a very limited way"). The Fifth Circuit has used the terms "nominee" and "agent" interchangeably when describing MERS authority under typical deed of trust language. *Harris County v. MERSCORP Inc.*, No. 14-10392, 2015 WL 3937927, at *10 (5th Cir. June 26, 2015).

In the specific context of trespass to try title suits, Texas courts have long held that a party has no authority to execute a deed or contract on behalf of unnamed "heirs" or other parties not specifically named in the instrument. *See Baldwin v. Goldfrank,* 31 S.W. 1064, 1067 (Tex. 1895) (upholding exclusion of deed where "names of heirs for whom [the attorney-in-fact] purported to act appeared neither in the body nor the signature to the instrument"); *Stephens v. House*, 257 S.W. 585, 591 (Tex. Civ. App. – Galveston 1923) (administrator of estate not authorized to bind unnamed heirs, despite recitation in contract that administrator acted "for myself and the heirs to the estate of the aforesaid Mary Owens"); *see also Thompson v. Houston Oil Co.*, 37 F.2d 687, 689 (5th Cir. 1930) (conveyance ineffective to pass title as to parties not named either in the body of the instrument or under signature of grantor acting under power of attorney, citing *Baldwin*).

Here, Deutsche Bank claims that MERS executed the 2011 assignment as agent for the lender's "successors and assigns." (*See* Dkt. 84, at 7).[7] Therefore it was Deutsche Bank's burden under Texas law to prove the existence of that principal/agency relationship in 2011. Under the precedents cited above, the mere reference to IndyMac Bank's "successors or assigns" is insufficient, because it fails to specify the names of those persons or entities (assuming they even existed). Nor has Deutsche Bank submitted any extrinsic evidence which might identify MERS's principal. From other cases the court might take notice that MERS acts as "common agent" for its member mortgage lenders. *See Harris County v.*

---

[7] Deutsche Bank also contends that MERS executed the 2011 assignment on its own behalf as "beneficiary" under the Deed of Trust. This argument is considered and rejected in part 5, below.

9

*MERSCORP Inc.*, No. 14-10392, 2015 WL 3937927 (5th Cir. June 26, 2015). But that is no help here, because nothing in the record negates the possibility that the rights to the Burke Note and/or Deed of Trust were transferred to a non-member of MERS, with whom MERS has no principal/agent relationship.

In sum, *L'Amoreaux* does not undermine this court's judgment in favor of the Burkes because (1) there is no record evidence of a prior assignment of the lender's interest in the Note or Deed of Trust, (2) there is no record evidence that any purported assignor existed at the time of the 2011 assignment; and (3) there is no record evidence of a principal/agency relationship between MERS and any "successor or assign" of the lender when the assignment was executed.

3. *No Recording Requirement for Assignments*

Deutsche Bank's third argument is a red herring. Nothing in the Court's findings and conclusions suggests or assumes that under Texas law an assignment of a deed of trust must be recorded in the local county clerk's office to be effective. Many Texas intermediate appellate courts may be cited for the proposition that an assignment need not be recorded in order to bind the parties to that instrument. *See e.g.*, *Roper v. CitiMortgage, Inc.*, No. 03-11-00887-CV, 2013 WL 6465637 (Tex. App. – Austin 2013); *Denson v. First Bank & Trust of Cleveland*, 728 S.W.2d 876, 877 (Tex. App. – Beaumont 1987); s*ee also Harris County v. MERSCORP Inc.*, No. 14-10392, 2015 WL 3937927 (5th Cir. June 26, 2015) (making an "*Erie* guess" that the Texas Supreme Court would interpret Texas Local Government Code

§ 192.007 as imposing no duty to record assignments of deeds of trust when the interests in related promissory notes are transferred).

Texas law is clear that chain-of-title need not be proven by official recordation. Proof of assignment may be by testimony as well as by documentation. *Priesmeyer v. Pac. Sw. Bank, F.S.B.*, 917 S.W.2d 937, 939 (Tex. App. – Austin 1996). Nevertheless, *some* proof is required, and Deutsche Bank has offered none–beyond, that is, a single problematic assignment that is ineffective for the various reasons explained here.

*4.      Standing to Challenge Assignment*

Deutsche Bank asserts that the Burkes have no standing to challenge the 2011 assignment, citing *Reinagel v. Deutsche Bank Nat'l Trust Co.*, 735 F.3d 220 (5th Cir. 2013). But *Reinagel* expressly recognized that Texas courts have long followed the majority rule that a homeowner is allowed "to challenge the chain of assignments by which a party claims a right to foreclose . . . ." *Id.* at 224. It is true that in Texas an obligor cannot defend against an assignee's efforts to enforce the obligation on a ground that merely renders the assignment "voidable at the election of the assignor," such as a fraudulent signature by an unauthorized corporate agent. *Id.* at 225. The problem here is not a voidable defect that a defrauded assignor might choose to disregard – it is the absence of a valid assignor (*i.e.* a real entity owning the right to be assigned) in the first place. *Cf. L'Amoreaux v. Wells Fargo Bank, N.A.*, 755 F.3d 748, 750 (5th Cir. 2014) (considering homeowner's challenge to validity of MERS assignment on its merits, implicitly rejecting bank's "voidable" argument).

11

Indeed, it is misleading to characterize this as a question of defendants' "standing," as though the Burkes were asserting an affirmative defense on which they bore the burden of proof. Texas law is clear that a party seeking to foreclose on a home equity loan bears the burden to demonstrate its authority to prosecute the foreclosure. *See, e.g.*, Tex. R. Civ. P. Rule 736.1(d)(3)(B) (petition must describe "the authority of the party seeking foreclosure"); Rule 736.6 ("the petitioner has the burden to prove by affidavits on file or evidence presented the grounds for granting the order [allowing foreclosure]"). When the entity seeking to foreclose was not party to the original transaction, then that entity must be able to trace its right to foreclose back to the original mortgagee. *See e.g. Leavings v. Mills*, 175 S.W.3d 301, 310 (Tex. App. – Houston [1st Dist.] 2004) (party seeking to enforce note must show "unbroken chain of assignments" to the original mortgagee); *Miller v. Homecomings Financial, LLC*, 881 F.Supp.2d 825, 829 (S.D. Tex. 2012) (citing cases).

Given its failure to offer any chain of title proof other than the facially invalid 2011 assignment, Deutsche Bank has not shown that it is a real party in interest here. Deutsche Bank was a stranger to the original transaction between the Burkes and their lender in 2007, and, on this trial record, Deutsche Bank remains a stranger to this day.

5.   *The Dual Capacity Argument*

In its supplemental brief, Deutsche Bank asserts that MERS was also acting in its own behalf as "beneficiary" under the Deed of Trust when it executed the 2011 assignment. A court's primary duty in construing a written contract is to ascertain the true intention of the parties as expressed in the language of the document itself. *Coker v. Coker,* 650 S.W.2d 391,

393 (Tex. 1983). In this document, the name of the assignor, "Mortgage Electronic Registration Systems, Inc." appears three (3) times — in the body of the assignment, above the signature line, and in the corporate acknowledgement. Each time, MERS's name is immediately followed by the phrase "as nominee for" the lender, IndyMac Bank, its successor and assigns. P. Ex. 2. Nowhere does this document hint that MERS intended to convey its own rights,[8] or that it was acting as principal rather than as agent for other entities.

Moreover, in the context of real estate transactions, Texas has long followed the common law rule that "in order to convey by grant, the party possessing the right must be the grantor, and use apt and proper words to convey to the grantee, and merely signing and sealing and acknowledging an instrument in which another person is grantor, is not sufficient." *Agric. Bank v. Rice,* 45 U.S. 225, 4 How. 225, 242 (1846). Applying this rule in an early case, the Texas Supreme Court declared as "wholly inoperative" a deed signed by a spouse who was not named as grantor in the body of the deed. *Stone v. Sledge,* 26 S.W. 1068, 1069 (Tex. 1894). The bank's position here is less compelling than that rejected in *Stone*, because "MERS as beneficiary" appears neither in the signature line nor in the body of the 2011 assignment.

Later Texas case law clarified that "[w]hile the premises of the deed must disclose certainly who the grantors are, . . . [t]he requirement of the rule is met if, from the deed in

---

[8] For purposes of this motion only, the court assumes without deciding (1) that MERS was not required to act solely as nominee for the lender under the Deed of Trust, and (2) that MERS had contractual authority under its member agreements to make assignments in its own name, and not merely "as nominee" for its member entities.

13

its entirety, enough is shown from which, by the aid of extrinsic evidence, the names of the grantors can be made certain." *Texas Pac. Coal & Oil Co. v. Patton,* 238 S.W. 202 (Tex. Comm. 1922), quoting *Creosoted Wood Block Paving Co. v. McKay,* 211 S.W. 822, 824 (Tex. Civ. App. – Dallas 1919) (internal quote marks omitted). Deutsche Bank presented no such extrinsic evidence at trial. The sole evidence is the assignment itself, drafted by Deutsche Bank's law firm,[9] which repeatedly declares that MERS was acting in a single, representative capacity–"as nominee for the lender, its successor and assigns."

Words matter, especially in real estate transactions. *See Univ. Sav. Ass'n v. Springwoods Shopping Ctr.*, 644 S.W.2d 705, 706 (Tex. 1982) ("the terms set out in a deed of trust must be strictly followed"); *see also Mathis v. DCR Mortg. III Sub I, L.L.C.*, 389 S.W.3d 494, 507 (Tex. App. – El Paso, 2012) ("The rules of interpretation that apply to contracts also apply to notes and deeds of trust."). Based on the words of the 2011 assignment, MERS was no more acting on its own behalf than was the bank's own law firm.

6.   *Conclusion*

Given its day in court, Deutsche Bank was content to risk its entire claim on a single problematic document. For reasons explained above, that gambit failed. Long-established Texas common law principles of agency, assignment, real property, and contract

---

[9]   The firm's name appears in the upper left-hand corner of the document. P. Ex. 2.

interpretation apply to all litigants, banks included. Deutsche Bank's motion to alter or amend the judgment must therefore be denied.[10]

There remains one additional matter. In the last sentence on the last page of its last brief to this court, Deutsche Bank asks to reopen the trial record to provide "the wet ink original of the Note or testimony affirming Deutsche Bank's status as holder of the Note." (Dkt. 90, at 7). No authority or excuse is offered for this breathtakingly late request. Even assuming such evidence exists, Deutsche Bank does not pretend that it is "newly discovered", nor that the bank was excusably ignorant about it until after trial despite using due diligence to discover it. *See* 11 WRIGHT, MILLER & KANE, FEDERAL PRACTICE AND PROCEDURE § 2808 (2012). After four years of litigation, including court-ordered mediation and trial on the merits, the time for such a *deus ex machina* maneuver has long since passed. The Burkes are entitled to the finality of judgment that our judicial process is intended to provide. The bank's request for a do-over is denied.

Signed at Houston, Texas, on July 31, 2015.

Stephen Wm Smith
United States Magistrate Judge

---

[10] However, the court will issue amended findings and conclusions to better comport with the record evidence, as well as an amended final judgment.