**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | | |
|---|---|---|
| DEUTSCHE BANK NAT'L TRUST CO., | § | |
| AS TRUSTEE OF THE RESIDENTIAL ASSET | § | |
| SECURITIZATION TRUST 2007-H UNDER THE | § | |
| POOLING AND SERVICING AGREEMENT | § | |
| DATED JUNE 1, 2007, | § | |
| *Petitioner*, | § | |
| | § | |
| v. | § | CIVIL ACTION NO. H-11-1658 |
| | § | |
| JOHN BURKE AND JOANNA BURKE, | § | |
| *Defendants*. | § | |

## OPINION ON REMAND

Judge Learned Hand believed that above the portals of every courthouse should be

inscribed the famous admonition of Oliver Cromwell: "I beseech ye in the bowels of Christ,

think that ye may be mistaken."[1] This opinion is written in that spirit.

## I.    Procedural Background

Deutsche Bank brought this suit to foreclose on a home equity lien. After a bench trial

in 2015, this court ruled in favor of the homeowners, holding that  Deutsche Bank based its

foreclosure claim entirely upon a deed of trust assignment which was void and invalid. Dkt.

94. Among other deficiencies, the purported assignment was executed by an entity (MERS)

acting solely as agent for a principal (IndyMac Bank) that no longer existed. After entry of

judgment, Deutsche Bank filed a motion to alter or amend the judgment, which was denied

---

[1]    Learned Hand, Morals in Public Life (1951).

in a written opinion.[2] One of the arguments considered and rejected was that MERS had executed the assignment as a principal on its own behalf, rather than merely as agent on behalf of a disclosed principal. *Id.* at 960.

On appeal the Fifth Circuit disagreed, concluding in an unpublished opinion that MERS had validly assigned its right to foreclose under the deed of trust to Deutsche Bank. The final judgment was vacated and the case remanded to this court "to determine whether Deutsche Bank met the remaining requirements to foreclose under Texas law and, if so, grant a final judgment for Deutsche Bank and rule on any outstanding request for attorneys' fees." *Deutsche Bank Nat'l Trust Co. v. Burke*, No. 15-20201, slip op. at 7 (5th Cir. July 19, 2016).

Upon remand, this court directed the parties to submit additional briefing on whether Deutsche Bank had satisfied the requirements of the Texas Constitution for a valid and enforceable home equity lien. Dkt. 119. The parties were also directed to consider the impact of a recent decision by a Texas appellate court upon the panel's ruling.

For reasons explained below, the court finds that the Burkes' constitutional challenges to the lien have no merit. However, binding Texas Supreme Court precedent,[3] as well as at

---

[2] *See Deutsche Bank Nat'l Trust Co. v. Burke*, 117 F. Supp. 3d 953 (S.D. Tex. 2015).

[3] In a diversity case such as this, Texas substantive law governs the interpretation of contracts. *Erie R.R. Co. v. Tompkins,* 304 U.S. 64 (1938). To determine state law, federal courts look to the final decisions of the state's highest court. *Transcon Gas Pipe Line Corp. v. Transp. Ins. Co.,* 953 F.2d 985, 988 (5th Cir. 1992).

least three Fifth Circuit decisions adhering to that precedent,[4] compel the conclusion that the panel's *Erie* guess about the validity of the assignment is clearly erroneous and, if followed, would work a manifest injustice.

## II.    Validity of  Lien under the Texas Constitution

When the Burkes initially applied to IndyMac Bank for a home equity loan in 2007, they were turned down. Both were then retired, and neither had employment income. Sometime later, another representative of IndyMac Bank called to advise that the loan would be approved, and that the Burkes' previous contact at the bank had been fired. On May 21, 2007, Joanna Burke signed a note promising to repay a loan from Indymac Bank in the amount of $615,000 plus interest, secured by a deed of trust placing a lien on the Burkes' homestead in Kingwood, Texas. Four days after closing, the Burkes received loan documents from IndyMac, including an unsigned loan application falsely claiming that the Burkes had employment income of $10,416.67 per month. Because the Burkes had never claimed any employment income during the loan process, they promptly notified the bank of the error. The bank took no steps to cure that defect.

Article XVI Section 50 of the Texas Constitution imposes exacting  requirements for a homestead lien in Texas. A constitutionally noncompliant lien is invalid unless and until

---

[4]    In the Fifth Circuit, the rule of orderliness generally forbids one panel from overruling a prior panel. *Teague v. City of Flower Mound,* 179 F.3d 377, 383 (5th Cir. 1999). This rule extends to conflicting language in the subsequent case. *Arnold v. U.S. Dept. of Interior,* 213 F.3d 193, 196 n.4 (5th Cir. 2000) ("under the rule of orderliness, to the extent that a more recent case contradicts an older case, the newer language has no effect.").

the noncompliance is cured. *Wood v. HSBC Bank USA, N.A.,* 505 S.W.3d 542, 543 (Tex. 2016). The Burkes maintain that the home equity lien failed to satisfy the requirements of Section 50 in several respects:

> 1.The application for the extension of credit was not voluntary, written, and consented to by the homeowners, in violation of Tex. Const. art. XVI, § 50(a)(6)(A), (Q)(v);
>
> 2.The lender failed to cure the defect in the loan application after notice from the homeowners, violating § 50(a)(6)(Q)(x);
>
> 3.The value of the total indebtedness exceeded 80% of the home's total value,violating § 50(a)(6)(B);
>
> 4.The loan closed sooner than 12 days after the borrower applied for it, violating § 50(a)(6)(M)(i);
>
> 5.The loan closed sooner than one day after the homeowner received a copy of the loan application, violating § 50(a)(6)(M)(ii); and
>
> 6.The lender failed to provide a copy of the loan application documents at closing, as required by § 50(a)(6)(Q)(v).

Dkt. Nos. 121, 131. For reasons explained below, none of these challenges have merit.

The first two challenges center on the bank's falsification of the Burkes' employment income on the unsigned loan application. While this may well be evidence of the bank's intent to defraud underwriters and subsequent investors, it does not signify a violation of the cited constitutional provisions.[5] Subsection 50(a)(6)(A) requires "a voluntary lien on the homestead created under a written agreement with the consent of each owner." It says nothing about the loan application, which may be given orally or electronically and need not

---

[5]     The Burkes' counsel conceded the point at the status conference on remand. Dkt. 126 at 5.

be submitted in writing. *Cerda v. 2004-EQR1 L.L.C.,* 612 F.3d 781, 788-89 (5th Cir. 2010) (citing 7 Tex. Admin. Code § 153.12(2)). The other cited provision, Subsection 50(a)(6)(Q)(v), requires only that the owner receive a copy of the final loan application as well as all documents signed by the owner at closing. Those requirements were met here. While the final loan application may have contained incorrect (and even fraudulent) information, it was the final loan application, and it was provided to the borrowers as required.

The third challenge – excessive loan to home value ratio – is unsupported by evidence at trial. At closing the Burkes signed an affidavit in which they expressly represented that the amount of the loan "does not exceed eighty percent (80%) of the fair market value of the Property on the date the Extension of Credit is made." *See* Texas Home Equity Affidavit and Agreement § I.E. (attached as Ex. A to D.Ex. 11). The amount of the loan was $615,000, and no evidence was introduced at trial suggesting that this loan amount exceeded 80% of fair market value. Nor did the Burkes offer evidence to justify disregarding the representation of value made in their affidavit at closing.

The closing date challenges (items 4 and 5) are similarly without merit, but for different reasons. The alleged violation of Subsection 50(a)(6)(M)(i) – that the loan must close no earlier than 12 days after the loan application – hinges on the assertion that the Burkes never applied for the loan they received. They contend that their initial loan application was turned down, and they never reapplied. However, the most natural

interpretation of the events here is that they constituted a single loan transaction – after the initial rejection, the Burkes' loan application was simply reactivated by the bank, and the Burkes ratified that process by going forward with the loan transaction. *See Cerda,* 612 F.3d at 789 (holding that a final loan amount higher than originally applied for did not trigger another 12-day waiting period, since it was all "part of the same loan transaction."). As for the alleged violation of Subsection 50(a)(6)(M)(ii) – that the loan must close no less than one business day after the date the homeowner receives a copy of the loan application – the bank correctly observes that this provision of the Texas Constitution did not take effect until December 4, 2007, more than six months *after* the Burkes' loan was closed. *See* TEX. CONST. art. 16, § 50, historical notes (citing Acts 2007, 80th Leg., H.J.R. No. 72). Thus the closing date challenges are not well taken.

The sixth and final challenge is the failure to provide a copy of the final loan application "at closing." This contention misreads Subsection 50(a)(6)(Q)(v), which provides as follows:

> (v) *at the time the extension of credit is made,* the owner of the homestead shall receive a copy of the final loan application and all executed documents signed by the owner at closing related to the extension of credit[.]

(emphasis added). The final loan application is thus not due at closing, but "at the time the extension of credit is made." This wording makes clear that these two dates are not necessarily synonymous. This makes sense, because the borrower's mandatory three-day revocation period renders it unlikely that the actual extension of credit will occur the same

day as the closing. The record in this case does not disclose exactly when the extension of credit was made. It is undisputed the Burkes received the loan application four days after closing. Transcript (Dkt. 74) at 79. Absent proof that credit was actually extended before that date, there is no basis to invalidate the lien on this ground.

For all these reasons, the Burkes' contention that the home equity lien was constitutionally deficient must be rejected.

## III. Validity of Assignment under Texas Common Law

Nevertheless, this court remains convinced that Deutsche Bank is not entitled to foreclose on the Burkes' property, because the assignment underlying its claim is void. Acutely aware that the panel reached the opposite conclusion, this court accepts that the basis for its earlier judgment was misunderstood. The balance of this opinion aims to correct that misunderstanding, and show how starkly the panel's conclusion deviates from binding precedent of both the Texas Supreme Court and the Fifth Circuit. *See Seagraves v. Wallace*, 69 F.2d 163, 164-65 (5th Cir. 1934) ("An appellate court . . . ought to have power to do justice according to law, and should be more ready to correct its own previous error, if such clearly appears, than to correct the errors of the District Court. Justice is better than consistency.").

As a preliminary matter, this court will address the very limited circumstances under which a lower court may properly disregard an appellate court's instructions on remand.

## A.    Law of the Case

Under the law of the case doctrine, an issue of law or fact decided on appeal may generally not be re-examined either by the district court on remand or by the appellate court on a subsequent appeal. *Illinois Central Gulf R.R. v. International Paper Co.,* 889 F.2d 536, 539 (5th Cir. 1989). The doctrine follows from the sound public policy that litigation should have an end. *White v. Murtha,* 377 F.2d 428, 431 (5th Cir. 1967) (*citing Roberts v. Cooper,* 61 U.S. 467, 481 (1857)). It is an exercise of judicial discretion, not a limit on judicial power. *See Messinger v. Anderson,* 225 U.S. 436, 444 (1912).

The law of the case doctrine is not absolute, and has several recognized (if narrow) exceptions. The Fifth Circuit has explained that "a prior decision of this court will be followed without re-examination . . . unless (i) the evidence on a subsequent trial was substantially different, (ii) controlling authority has since made a contrary decision of the law applicable to such issues, or (iii) the decision was clearly erroneous and would work a manifest injustice." *North Mississippi Communications, Inc. v. Jones,* 951 F.2d 652, 656 (5th Cir. 1992).

A corollary of the law of the case doctrine, known as the mandate rule, provides that a lower court on remand must implement both the letter and the spirit of the appellate court's mandate. *See Johnson v. Uncle Ben's, Inc.,* 965 F.2d 1363, 1370 (5th Cir. 1992). Again, this rule is not absolute, even upon lower courts. *See United States v. Becerra,* 155 F.3d 740, 753 (5th Cir. 1998) ("Consequently, unless one of the exceptions to the law of the case doctrine

applies, the district court [is] bound to follow our mandate. . .").

For reasons explained below, this case falls squarely within the third exception. The unpublished panel opinion contradicts not only long-settled Texas law, but also several published decisions of the Fifth Circuit. Unless the decision is reversed, it will work a manifest injustice upon the Burkes, as well as other Texas residents who might be turned out of their homes in similar circumstances.

## B.    The 2011 Assignment

Deutsche Bank's right to foreclose hinges entirely[6] upon a 2011 assignment from the original lender, IndyMac Bank. This document, a one-page standard form prepared by Deutsche Bank's attorneys, contained the following signature block:

> MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC., AS NOMINEE FOR, INDYMAC BANK, F.S.B., ITS SUCCESSORS AND ASSIGNS
> By:    _____/s/_____
> Brian Burnett Assistant Secretary

P.Ex. 2. Below that, in equally prominent lettering, was a corporate acknowledgment that Mr. Burnett was acting in his capacity as "Assistant Secretary of MORTGAGE ELECTRONIC

---

[6]    Texas law provides other ways for a mortgagee to prove its right to foreclose, such as by showing that it holds the note. *See Miller v. Homecomings Financial, LLC,* 881 F. Supp. 2d 825, 829 (S.D. Tex. 2012). The current holder of the Burkes' note was never established at trial, as no bank representatives were called to testify (indeed, no bank representative bothered to attend). Counsel for the bank initially offered a copy of the note purporting to contain an endorsement in blank, but withdrew the document in the face of an authenticity objection. 117 F. Supp. 3d at 954-56. In an attempt to show that the bank had fraudulently altered documents, the Burkes offered as D.Ex. 12 various versions of the note (including the endorsed version), but no authenticated note endorsed in blank was ever admitted. Nor was there any evidence, via testimony or otherwise, that the bank held such a note.

REGISTRATION SYSTEMS, INC., AS NOMINEE FOR, INDYMAC BANK, F.S.B., ITS SUCCESSORS AND ASSIGNS." *Id.* Via this signature and corporate acknowledgment, IndyMac Bank is plainly identified as the principal, with MERS signing merely in the capacity as "nominee," or agent[7] for IndyMac.

The body of the assignment[8] further confirms this understanding of MERS' agency relationship to the transaction. Rather than beneficiary or assignor, it refers to MERS merely "as nominee for the lender, its successor and assigns." Moreover, the assignment purports to transfer "all rights accrued under said Loan Agreement," defined as both the promissory note and the deed of trust. MERS has never claimed to have any rights under the promissory note. It follows that MERS was not the intended assignor, because only IndyMac Bank possessed "all rights" under both the note and the deed of trust.

---

[7]    A "nominee" is a kind of agent. *See* Black's Law Dictionary 1211 (10th ed. 2014) ("A person designated to act in place of another, usu. in a very limited way"). The Fifth Circuit has used the two terms interchangeably when describing MERS' authority under the typical deed of trust language. *Harris County v. MERSCORP Inc.,* 791 F.3d 545, 558-59 (5th Cir. 2015).

[8]    "FOR VALUE RECEIVED, receipt of which is acknowledged, Mortgage Electronic Registration Systems, Inc., as nominee for the lender, its successor and assigns, PO Box 2026, Flint, MI 48501-2026, tel. (888)679-MERS, and existing under the law of Delaware, mortgagee of record of that one certain loan agreement evidenced by a promissory note and security instrument or deed of trust dated 05/21/2007 (the "Loan Agreement"), in the amount of $615,000.00, made or granted by JOANNA BURKE AND JOHN BURKE (Borrower) and recorded as CLERK'S FILE NO. 20070322928, in the official real property records of HARRIS County, Texas, GRANTS, ASSIGNS, AND TRANSFERS all rights accrued and to accrue under said Loan Agreement to DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE OF THE RESIDENTIAL ASSET SECURITIZATION TRUST 2007-A8, MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-H UNDER THE POOLING AND SERVICING AGREEMENT DATED JUNE 1, 2007, 1761 EAST ST. ANDREW PLACE SANTA ANA, CA 94705." P.Ex. 2.

This absence of ambiguity regarding MERS' role as agent in this transaction was tacitly conceded at trial. Deutsche Bank never contended in its pleadings or proposed pretrial order that the assignment (drafted by its own lawyers) was ambiguous on this point. No witnesses were called to offer parol testimony that, despite the wording used, MERS had intended to sign as principal on its own behalf. At the close of the bench trial, this court candidly explained its concerns:

> THE COURT:    MERS is not doing it in its own name here. MERS is acting as nominee for IndyMac Bank. They're an agent for an entity that no longer exists; right?

> Mr. JACOCKS:    Under the terms of the Deed of Trust and the Property Code, Texas Property Code, MERS is a beneficiary and nominee for both the originating lenders and its successors and assigns under the expressed language of this particular Deed of Trust and Texas law, and it does allow the holder or the assignee of the Deed of Trust to initiate foreclosure proceedings.

> THE COURT:    The nominee. That they were acting as nominee. They were not acting as beneficiary.

> MR. JACOCKS:    Okay.

> THE COURT:    That's what the Assignment says. The Assignment doesn't say: MERS, in our capacity as beneficiary, is transferring the interest in this document or instrument. They're saying: We're acting on behalf of IndyMac Bank, an entity which no longer exists. So that's what troubles me about this.

Tr. at 93-94. Counsel for the bank acknowledged the point, but offered no rebuttal or counter-argument. *Id.* at 95.

Consistent with its comments at trial, this court issued findings and conclusions that MERS had acted solely in its limited capacity as nominee, and thus had not assigned its own rights under the deed of trust to Deutsche Bank.[9] Whether MERS *possessed* the authority to assign its rights as beneficiary under the deed of trust was never doubted;[10] the critical issue was whether MERS *exercised* that authority — and on that score the assignment left no room for doubt.

### C.    The Panel Opinion

On appeal, Deutsche Bank did not directly confront the problematic wording of the assignment, and instead pursued a strategy of misdirection. The bank shifted attention to the deed of trust, falsely implying that this court had ruled that under that document MERS lacked authority either to foreclose or to assign that right to another. The bank's brief viciously assaulted this straw man,[11] tearing it limb from limb. But at the end of the day the

---

[9]    Other arguments raised by the bank were also considered and rejected by this court, but those findings and conclusions were not considered by the panel.

[10]    *See, e.g.,* 117 F. Supp. 3d at 960 n.8 (expressly assuming "(1) that MERS was not required to act solely as nominee for the lender under the Deed of Trust, and (2) that MERS had contractual authority under its member agreements to make assignments in its own name, and not merely 'as nominee' for its member entities.").

[11]    *See* Appellant's Brief, Statement of the Issues, at 2:

I. If authorized under a deed of trust, can MERS or its assignee foreclose on property, under Texas law, without demonstrating that it also holds the note?
II. When MERS is both the beneficiary of a security instrument as well as the

actual language of the assignment was left standing, unscathed except for the occasional misquotation.[12]

Even so, aided perhaps by the Burkes' *pro se* status, the strategy appears to have worked. Declaring that this court's reasons for invalidating the assignment "all misunderstand our precedent and Texas law," the panel resurrected the bank's scarecrow:

> The first three reasons [given by the magistrate judge] are all based on the incorrect premise that when MERS assigned the deed of trust to Deutsche Bank, acting per the assignment as "nominee for IndyMac Bank," it as beneficiary *did not have authority* to assign the deed of trust.

*Deutsche Bank*, No. 15-20201, slip op. at 5 (emphasis added). The panel opinion continued in the same vein:

> However, the original deed of trust named MERS as a beneficiary, and Texas law and our precedent make clear that MERS, acting on its own behalf as a book entry system and the beneficiary of the Burkes' deed of trust, *can* transfer its right to bring a foreclosure action to a new mortgagee by a valid assignment of the deed of trust.

*Id.* (emphasis added). Once again, a correct statement of Texas law. *See also Harris County v. MERSCORP Inc.,* 791 F.3d 545, 558-59 (5th Cir. 2015) ("In other words, because of the duality of the note and lien, it is possible that MERS could simultaneously be the principal

---

nominee of a   lender, does the lenders' [sic] dissolution negate MERS' authority to execute an assignment of the security instrument?

[12]   At several points, Deutsche Bank's brief pretended the assignment read that MERS transferred all of "its" rights under the Loan Agreement. *Id.* at 4, 8, 23. And when quoting the actual language of the assignment, the bank  omitted the "as nominee" limitation. *Id.* at 8 ("[MERS] GRANTS, ASSIGNS, AND TRANSFERS all rights accrued and to accrue under said Loan Agreement to Deutsche Bank...") .

of the lien and the agent of the lender who holds the note."). Of course, the fact that MERS *could* wear the hat of principal or agent under the 2007 deed of trust says nothing about which hat MERS *did* wear when it executed the 2011 assignment.

The panel answered the hat question in conclusory fashion:

> Here, MERS assigned *its* right to foreclose under the deed of trust to Deutsche Bank. That the assignment did not state that MERS was acting in its capacity as beneficiary does not change our analysis.

*Deutsche Bank*, No. 15-20201, slip op. at 5-6 (emphasis added). In other words, the actual wording of the assignment made no difference.

Disregarding unambiguous language is not a normal tenet of contract construction, yet the panel offered no Texas case law or doctrinal justification for doing so here. In a footnote, the panel cited an unpublished Fifth Circuit decision involving a similarly worded assignment by MERS as nominee. *Casterline v. OneWest Bank, F.S.B.,* 537 F.App'x 314 (5th Cir. 2013). But Casterline never contested the validity of that assignment, so the issue of MERS' capacity as principal or agent was never considered (much less decided) by that court. *Id.* at 317 ("Casterline has not challenged the assignment of the Security Instrument [by MERS] to OneWest.").

More important, even if *Casterline* had held that words of capacity in signing a contract could be ignored, such a ruling would have contradicted a long line of Texas and Fifth Circuit precedent, as the next section will demonstrate.

### D.    Principles of Agency Law and Contracting Parties

More precisely stated, the question is a simple one: was MERS a party to this contract? If it signed as principal, MERS was a party and its rights were assigned; if it signed merely as agent for IndyMac, then MERS was not a party and only IndyMac's rights (or those of its "successors and assigns") could have been transferred.

This is not a particularly novel issue in the law of agency and contracts. What follows is a brief survey of two centuries of common law on this question, commencing before Texas joined the Union. The polestar of the inquiry has always been the parties' intent, starting with the language of the agreement itself — and often ending there, when the parol evidence rule applies. *See Cavaness v. General Corp.,* 283 S.W.2d 33, 39 (Tex. 1955).

### 1.    Common Law

It is fitting to begin with Chief Justice John Marshall's decision in *Hodgson v. Dexter,* I Cranch [5 U.S.] 345 (1803). Shortly after the War Department was moved to Washington D.C., its building was destroyed by fire. The lessor of the building (Hodgson) sought to hold the Secretary of War personally liable for breach of covenant, pointing to Dexter's personal seal beside his signature on the lease. Justice Marshall rejected the claim, finding that other language in the lease negated an intent to contract on his own behalf. "The whole face of the agreement then manifests very clearly a contract made entirely on public account, without a view, on the part of either the lessor or the lessee, to the private advantage or responsibility of Mr. Dexter." *Id.* at 365.

Justice Joseph Story, riding circuit, faced a similar issue in *Thayer v. Wendell,* 1 Gall. 37, 23 Fed. Cases 905 (C.C.D. Mass. 1812). The suit was for breach of covenant in a deed of conveyance of land, and defendant Wendell had executed the deed as surviving executor of the testator. The covenant at issue began with this recitation: "And in my capacity aforesaid, but not otherwise, I do covenant . . .." Justice Story had no difficulty disposing of the claim. "[T]he first rule of construction is, that every deed is to be construed according to the intent of the parties. Now what was the apparent intent of the parties? Certainly . . . that the defendant should not be personally bound." It made no difference that this construction would leave the plaintiff with no remedy. "We are not at liberty to reject any words, which are used in a contract, when they are sensible in the place where they occur. . . ." *Id.* at 906.

Following the lead of these prominent jurists, the law became settled that determining the parties to a contract was a matter of contract interpretation no different than any other. *See, e.g., Hewitt v. Wheeler,* 22 Conn. 557, 562-63 (1853) ("[T]he *intention*, when ascertained, is the true and only rule in these, as in other contracts, written or unwritten. We want only to know what the parties, by the language used, intended to declare.") (emphasis in original). In his famous Commentaries, Chancellor James Kent declared: "It is a general rule, standing on strong foundations, and pervading every system of jurisprudence, that where an agent is duly constituted, and names his principal, and contracts in his name, the principal is responsible, and not the agent." 2 Kent, Commentaries on American Law, p. 492 (1st ed. 1828).

This common law maxim has survived intact into the modern era. The first Restatement of Agency in 1933 recited the familiar rule:

**§ 320 Principal Disclosed**

Unless otherwise agreed, a person making or purporting to make a contract with another as agent for a disclosed principal does not become a party to the contract.

The Restatement further provided that the parol evidence rule applies to the question of whether an agent is or is not a party, just as it does to any other issue of contract interpretation. Restatement of Agency § 323(1) (1933). Essentially the same principles were carried forward in the next version of the Restatement issued in 1958. *See* Restatement (Second) of Agency § 155 (1958) ("In the absence of manifestations to the contrary therein, an unsealed written instrument is interpreted as the instrument of the principal and not of the agent if, from a consideration of it as a whole, it appears that the agent is acting as agent for a principal whose name appears as such.").

2.      **Texas Law**

The first Texas Supreme Court case to reach the issue toed the common law line. In *Heffron v. Pollard*, 11 S.W. 165 (Tex. 1889), a seller sued Heffron for breach of a contract to buy pipe. Heffron denied he was party to the contract, contending that he signed as agent for another (Fry), using the words "J.W. FRY, per HEFFRON." The seller offered testimony purporting to show that Heffron, though signing in the name of Fry, had really intended to contract on his own behalf. The Supreme Court held that such parol evidence could not be

used to vary the plain meaning of the contract:

> As to the legal effect of this contract upon its face there can be no doubt. It discloses the names and relation of all the parties connected with it. It binds Fry, the principal, and does not bind Heffron, the agent. . . Is it permissible, in order to bind him, to show by parol testimony an intention exactly contrary to that expressed on the face of the writing, namely, that Heffron was bound by it, and that Fry was not bound? In our opinion, this cannot be done without violating a cardinal rule of evidence.

11 S.W. at 166-67. Texas courts have consistently applied the *Heffron* parol evidence rule to all manner of contracts, including real property transactions. *See, e.g., Farrier v. Hopkins,* 112 S.W.2d 182, 183 (Tex. 1938) (no liability for an undisclosed principal not named in a deed of conveyance or a negotiable instrument such as a vendor's lien note).

The most current and comprehensive treatment of this issue by the Texas Supreme Court is *Cavaness v. General Corp.*, 283 S.W.2d 33 (Tex. 1955). Cavaness was the owner of certain patent rights, and entered an agreement to license those rights in exchange for royalty payments. Instead of executing the agreement in his own name, Cavaness made the agreement in the name of a non-existent company called D-A-M Company, and signed the contract as "President" of that company. When the royalty payments were not forthcoming, Cavaness brought suit individually on his own behalf, claiming to be the real contracting party notwithstanding the contrary language of the contract.

Writing for a unanimous court, Justice Garwood rejected the claim, applying the parol evidence rule of *Heffron v. Pollard*:

> The same decision appears to us to establish that a writing such as that in the instant case reflects the status of the purported agent (petitioner) as a nonparty

18

> with sufficient clarity to make the Parol Evidence Rule applicable to proof that he is a party. Certainly a person recited and acknowledged as acting merely as a corporate officer is no more likely to be contracting for himself personally than is one recited to be acting as agent for another individual. The elaborate instant writing, with its corporate acknowledgment, and lacking any individual acknowledgment, thus perhaps even more clearly excludes the petitioner as a party than did the brief and unacknowledged agreement in the Heffron case.

283 S.W.2d at 38. The Court emphasized that this ruling was consistent with the Restatement of Agency, Section 323, as well as the explanatory comments. *Id.* at 37.

Two additional aspects of the *Cavaness* decision are significant. First, it made no difference to the result that Cavaness himself, as owner of the patent rights in question, held a personal interest in the subject matter of the contract. According to the Court, if the terms of the contract exclude the agent as a party, the parol evidence rule controls, whether or not the agent holds a personal stake in the matter: "We see no reason why the Rule should not apply in the one case as in the others. . . ." *Id.* at 38.

Nor did it make any difference that the nominal principal — "D-A-M Company"— never existed, either before or after the contact was executed. The court expressly endorsed the view of the Restatement that, when the contract language is unambiguous, parol evidence is not admissible "although the effect is to show that the purported principal is nonexistent." *Id.* at 37 (quoting Comment b., Sec. 326).

*Cavaness* remains good law to this day,[13] its teachings frequently applied in Texas

---

[13]    3 Tex. Jur. 3d Agency § 310 (June 2017 Update) ("Where an unambiguous contract is executed and signed by an agent in the principal's name, extrinsic evidence is generally not admissible to show that the agent, in executing the agreement, intended to bind him- or herself only, instead of the principal." (citing *Cavaness*)).

courts.[14] The Fifth Circuit has frequently recognized *Cavaness* as controlling authority. The first such case was *Northern Propane Gas Co. v. Cole,* 395 F.2d 1 (5th Cir. 1968). The dispute was over a covenant not to compete in a corporate buy-out contract between the acquirer, Northern Propane, and Economy Gas & Supply, a local dealer being acquired. More specifically, the question was whether in addition to binding Economy as a corporate entity, the covenant also bound Mike Cole, its president and sole stockholder. Cole had signed the contract as president of the company.

In his inimitable style, Judge John Brown began by describing the case as a "sort of man bites dog situation." *Id.* Unlike the typical scenario where the author of a boiler plate adhesion contract seeks to enforce its harsh literal terms, the corporate plaintiff here "[a]ssert[s] with dead earnestness that its own form contract, filled in by its own responsible and presumably articulate representative of considerable responsibility, is ambiguous in its reference to the identity of all the parties to be bound by it." *Id.* at 1. Applying Section 323 of the Restatement of Agency as approved in *Cavaness,* Judge Brown had little trouble disposing of the case:

---

[14]     *See, e.g., Fleming Associates, L.L.P. v. Barton,* 425 S.W.3d 560, 573 (Tex. App. – Houston [14th Dist.] 2014, pet. denied); *Hull v. S. Coast Catamarans, L.P.,* 365 S.W.3d 35, 45 (Tex. App.–Houston [1st Dist.] 2011, pet. denied); *Barker v. Brown,* 772 S.W.2d 507, 510 (Tex. App. – Beaumont 1989, no writ); *FDIC v. K-D Leasing Co.,* 743 S.W.2d 774, 775-76 (Tex. App. – El Paso 1988, no writ); *Priest v. First Mortgage Co. of Texas, Inc.,* 659 S.W.2d 869, 872 (Tex. App. – San Antonio 1983, writ ref'd n.r.e.); *Jordan v. Rule,* 520 S.W.2d 463, 465 (Tex. Civ. App. – Houston [1st Dist.] 1975, no writ) ("A written contract may itself afford the highest evidence of the identity of the contracting parties and the terms of the agreement," citing *Detroit Fidelity & Surety Co. v. First Nat'l Bank,* 66 S.W.2d 406, 407 (Tex. Civ. App. – Fort Worth 1933, no writ)).

Structured as the contract was with the purposeful insertion of the corporate name and the corporate title of the signatory agent, there is no basis whatsoever for holding that there was either an intention to hold Mike Cole personally responsible or any basis for any genuine doubt thereon.

*Id.* at 4.

Similarly, in *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200 (5th Cir. 1975), the court overturned a default judgment against an individual for breach of a contract related to a letter of credit issued by the bank. The agreement was plainly signed by the individual as agent for the corporation only:

"South East Construction Co., Ltd. (Handwritten)
By: (Printed) Jack D. Baize (Handwritten)"

Citing *Heffron, Cavaness,* and similar authorities, Judge Wisdom recited the familiar rule:

Construction of this contract must begin with the presumption that if an agent signs a contract for a disclosed principal, he does not intend to make himself a party to the instrument.

.    .    .

Unless an ambiguity is created  by some contrary manifestation in the body of the instrument itself, parol evidence is not admissible to show that the agent is or the principal is not a party to the instrument, except where the plaintiff seeks to reform the contract.

*Id.* at 1207. The court also quoted from the treatise of Professor Seavey, who had served as the Reporter for the Restatement of Agency:

If the parties are spelled out unambiguously, as where the agent signs 'P by A' or 'A for P',  parol evidence can not be introduced to show the intent to make the agent a party or the principal not a party, except where reformation is sought.

*Id.* Finding no ambiguity in the agent's signature, the court vacated the judgment against the

individual agent.

The Fifth Circuit reaffirmed the continuing vitality of this line of precedent in an opinion written by Judge Garwood, the son of the Texas Supreme Court justice who had authored *Cavaness.* In *Martin v. Xarin Real Estate, Inc.,* 703 F.2d 883 (5th Cir. 1983), the corporate defendant was sued for breach of contract to purchase a shopping center. The corporation attempted to avoid liability by claiming that it had signed the contract merely as the agent for the real buyer, who was known to the seller but not named in the contract. Once again, the parol evidence rule proved fatal to the claim:

> Nothing in the contract shows or gives the impression that Xarin is acting as agent for another; rather the contract negates any such impression. Where, as here, a written contract is signed in the name of a party who happens to be acting as an agent, but the contract gives no indication that any agency exists or that the party is signing other than as a principal or with any other qualifications, the agent is bound even though the other contracting party knows the identity of his principal. . . In such a case, parol evidence is inadmissible to show that it was the intention of the parties thereto that the agent not be personally bound, for such evidence would contradict the written contract.

*Id.* at 891.

The Fifth Circuit has applied these same contract and agency rules in jurisdictions other than Texas. *See, e.g., Gulf Shores Leasing Corp. v. Avis Rent-A-Car System, Inc.,* 441 F.2d 1385, 1391 (5th Cir. 1971) (applying Louisiana law); *U.S. Shipping Board Emergency Fleet Corp. v. Galveston Dry Dock & Constr. Co.,* 13 F.2d 607, 611-12 (5th Cir. 1926) (applying federal law). As Judge Brown observed in *Northern Propane,* the principles embodied in *Cavaness* are "not surprising," and "find general acceptance in Texas and

22

elsewhere." 395 F.2d at 2.

Little purpose would be served by extending this recitation of pertinent precedent. The point is that the common law rules for determining the parties to a contract have been settled for more than two hundred years. Few common law principles possess a more impeccable pedigree.

### E.      Irreconcilable Conflict With *Cavaness*

The panel opinion simply cannot be reconciled with *Cavaness.* Texas law presumes that a self-described agent signing a contract for a disclosed principal does not intend to make himself a party to the instrument. Yet the panel held that the explicit declaration of agent capacity did not matter in construing the contract. *Deutsche Bank*, No. 15-20201, slip op. at 6-7 ("That the assignment did not state that MERS was acting in its capacity as beneficiary does not change our analysis.").

To be fair, the panel did not say that an express declaration of agency on the signature line was *never* relevant in determining the parties to a contract. Perhaps the panel viewed this case as an exception to the general rule. If so, the opinion made no attempt to explain the contours of this exception, which is perhaps unsurprising given the appellant's mis-framing of the case. A few possibilities come to mind, though none are consistent with *Cavaness* or otherwise supported by Texas law.

One possible rationale is that, after all, MERS did possess rights of its own in the property under the deed of trust. Yet this was also true of Cavaness, who in fact owned the

patent rights that were transferred by the licensing agreement at issue. Cavaness had argued that an exception to the general rule should apply when the agent has an interest in the subject of the contract, citing some older cases.[15] The *Cavaness* court acknowledged that an agent's personal interest in the subject matter might be relevant when the "name as used in [the] agreement is inherently ambiguous." 283 S.W.2d at 38. But when, as in the case before it, the agreement was "quite unambiguous" that Cavaness had chosen to sign as agent and not principal, the parol evidence rule forbade any proof to the contrary. *Id.* ("We see no reason why the [Parol Evidence] Rule should not apply in the one case as in the others").

Another possible rationale is that, at the time of the assignment, MERS and Deutsche Bank were likely aware that IndyMac Bank did not exist as a corporate entity. But the same was true in *Cavaness* – according to the petition all involved knew that the purported principal (D-A-M Company) did not exist . 283 S.W.2d at 35-36. As the *Cavaness* court noted, there was some authority for the proposition that when an agent purports to make a contract with another for a principal whom both know to be nonexistent, the agent is a party "unless otherwise agreed." Restatement of Agency, section 326. But, as *Cavaness* also explained, this qualification means that the parol evidence rule still governs when the contract is unambiguous:

> As stated in Sec. 323, if it appears unambiguously in an integrated contract that the agent is not a party, parol evidence is not admissible to show the contrary intent and, except in the case of a negotiable instrument, *this is so although the effect of the evidence is to show that the purported principal is nonexistent.*

---

[15]     *See, e.g., Martin v. Hemphill,* 237 S.W. 550 (Tex. Com. App. 1922).

283 S.W.2d at 37 (quoting Restatement of Agency section 326, Comment b) (emphasis added). Thus, it made no difference in *Cavaness* that the disclosed principal was a nonexistent corporation, and it makes no difference here.

Finally, the panel may have believed that MERS enjoys a unique status under the law, operating under a special dispensation from ordinary rules that bind other legal actors. Under this view, MERS always acts simultaneously as both beneficiary and nominee under the deed of trust. Like the two-headed fictional character Zaphod Beeblebrox,[16] MERS is a single integrated entity who happens to wear two opposing hats, one labeled "Principal" and the other "Agent." The difficulty with the dual capacity theory as an *Erie* guess[17] is that no Texas court at any level has ever adopted it. Moreover, a recent opinion by the Fourteenth Court of Appeals in Houston gives no reason to doubt that MERS, like any other legal entity, can act sometimes as principal only, and sometimes as agent only:

---

[16]     *See* Douglas Adams, *The Hitchhiker's Guide to the Galaxy* (First Ballantine Books Edition: November 1995). Beeblebrox was the figure-head President of the Imperial Galactic Government, a position which also blurred the line between official and representative capacities: "Only six people in the Galaxy knew that the job of Galactic President was not to wield power but to attract attention away from it." *Id.* at 40. The comparison of MERS to a two-faced fictional entity is not uncommon. *See* Christopher L. Peterson, *Two Faces: Demystifying the Mortgage Electronic Registration System's Land Title Theory,* 53 Wm. & Mary L. Rev. 111, 113 (2011) ("Like Janus, MERS is two-faced: impenetrably claiming to both own mortgages and act as an agent for others who also claim ownership.").

[17]     In the absence of a final decision by the state's highest court, it is the duty of the federal court to determine, in its best judgment, how the state's highest court would decide the issue presented. *American Int'l Specialty Lines Ins. Co. v. Canal Indemnity Co.,* 352 F.3d 254, 260 (5th Cir. 2003). This can include consideration of decisions by lower appellate courts in the state. *West v. American Telephone & Telegraph Co,* 311 U.S. 223, 237 (1940).

In *Nueces County* [*v. MERSCORP Holdings, Inc.,*No. 2:12-CV-00131, 2013
WL 3353948 (S.D. Tex. 2013)] the court determined that MERS was acting
merely as the nominee or agent of a lender, and in that limited capacity had no
power to assign the note to itself. *Id.* at *6. By contrast, the evidence in this
case shows that Irwin assigned the note to MERS as a beneficiary, not as a
nominee or agent for another lender.

*EverBank, N.A. v. Seedergy Ventures, Inc.,* 499 S.W.3d 534, 540-41 (Tex. App. – Houston

[14th Dist.] 2016, n.p.h.). Admittedly, the factual scenario in *Everbank* differs in some

respects from the case at bar.[18] Even so, the court's opinion affords no reason to doubt that

the ordinary rules of principal and agency apply to MERS as they do to any other legal entity

in Texas.

## IV.  Conclusion

This opinion unavoidably assumes a posture of defiance that is profoundly

uncomfortable for the author. After nearly forty years of working within this circuit at the bar

or on the bench, every natural instinct is to salute and obey. Nevertheless, in view of the long

common law tradition and precedents just described, it is difficult to imagine that jurists of

reason could debate whether MERS was a  party to the 2011 assignment.[19]

---

[18]  *EverBank* was an appeal from a summary judgment that voided a deed of trust. The court
ultimately concluded that, although the assignee of the deed of trust did not demonstrate its
right to foreclose based on the deed of trust, the assignee conclusively established its
standing to foreclose as holder of the note. 499 S.W.3d at 536.

[19]  To eliminate any possible doubt, an  appropriate course might be to certify the question to
the Texas Supreme Court under Texas Rule of Appellate Procedure 58.1. The Fifth Circuit
has occasionally invoked this procedure for home equity lien cases under the Texas
Constitution. *See, e.g., Doody v. Ameriquest Mortgage Co.,* 49 S.W.3d 342 (Tex. 2001);
*Stringer v. Cendant Mortgage Corp.,* 23 S.W.3d 353 (Tex. 2000); *cf. Priester v. JP Morgan
Chase Bank, N.A.,* 708 F.3d 667 (5th Cir. 2013), *abrogated by Wood v. HSBC Bank USA,
N.A.,* 505 S.W.3d 542, 548 (Tex. 2016).

Respectfully, this court concludes that the panel decision regarding the validity of the 2011 assignment is clearly erroneous. It contradicts binding authority from the Texas Supreme Court in violation of *Erie,* and disregards previous Fifth Circuit decisions, in violation of the circuit's rule of orderliness. The court further concludes that the panel opinion would work a manifest injustice to the Burkes and other Texas homeowners.

Final judgment will be rendered in favor of the Burkes, together with amended findings of fact and conclusions of law consistent with this opinion.

Signed at Houston, Texas on December 21, 2017.


Stephen Wm Smith
United States Magistrate Judge