IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| DEUTSCHE BANK NAT'L TRUST CO., § <br> as Trustee of the Residential Asset § <br> Securitization Trust 2007-A8, Mortgage § <br> Pass-Through Certificates, Series 2007-H § <br> under the Pooling and Servicing § <br> Agreement dated June 1, 2007, § <br> Petitioner, § <br> § <br> v. § <br> § <br> JOHN BURKE AND JOANNA BURKE, § <br> Defendants. § | CIVIL ACTION NO: H-11-1658 |

## SECOND AMENDED FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff Deutsche Bank National Trust Co. sued to foreclose a lien created under the Texas Home Equity Amendment against defendants John Burke and Joanna Burke. Deutsche Bank seeks a declaration that it is vested with all title and interest in the property, as well as an order authorizing it to proceed with foreclosure pursuant to Texas Property Code § 51.002. The parties consented to magistrate judge jurisdiction.

After a bench trial on February 6, 2015, judgment was entered in favor of the Burkes. Findings of fact and conclusions of law were entered in support of the judgment. Those findings and conclusions were later amended in light of the bank's post-trial motion, but the final judgment remained the same. That judgment was vacated on appeal, and the case remanded for further proceedings. The court now makes the following Second Amended Findings of Fact and Conclusions of Law. Any finding of fact that should be a conclusion of law is deemed a conclusion of law, and vice versa.

## Findings of Fact

1. Deutsche Bank National Trust Company is a corporation with its principal place of business in Santa Ana, California, and brings this suit in its capacity as Trustee of the Residential Asset Securitization Trust 2007-A8, Mortgage Pass-Through Certificates, Series 2007-H under the Pooling and Servicing Agreement dated June 1, 2007 ("Deutsche Bank").

2. Defendants John and Joanna Burke are individuals and homeowners residing at 46 Kingwood Greens Drive, Kingwood, Texas 77339.

**2007 Home Equity Loan**

3. In 2007, the Burkes applied for a home equity loan, which was initially rejected by IndyMac Bank, F.S.B. because they had no income. (Dkt. 74, Tr. 81-82)

4. Some time later, a different representative of IndyMac Bank called to advise that the loan would be approved, and that the Burkes' previous contact at the bank had been fired. (Tr. 82)

5. On May 21, 2007, Joanna Burke alone executed a note containing a promise to pay IndyMac Bank $615,000 plus interest in certain monthly installments in exchange for a loan from IndyMac Bank in that amount. (P.Ex. 3; D.Ex. 11;Tr. 36-37, 45-48)

6. The note was secured by a Texas Home Equity Security Instrument (a deed of trust) placing a lien on their home in Kingwood, Texas. (P.Ex. 1)

7. Under the deed of trust, John and Joanna Burke were the borrowers and IndyMac Bank was the secured lender as well as the loan servicer. (P.Ex. 1; Tr. 62-63)

8. At closing the Burkes signed an affidavit expressly representing that the amount of the loan did not exceed eighty percent (80%) of the fair market value of the property on the date the extension of credit was made. (D.Ex. 11) No evidence at trial was offered to contradict this representation.

9. The closing of the loan occurred more than twelve (12) days after the Burkes' initial loan application.

10. At all times relevant to this case, the Burkes were retired and had no employment income. (Tr. 81)

11. Four days after closing, the Burkes received a copy of the final loan application as well as all documents signed by the Burkes at closing. This documentation included an unsigned loan application form falsely declaring that the borrowers' employment income was $10,416.67 monthly (or exactly $125,000 per year). (Tr. 79; D.Ex. 2)

12. This false income declaration was knowingly made by IndyMac because the Burkes never claimed any employment income during the loan process. (Tr. 80-82)

13. The Burkes promptly notified IndyMac of the inaccurate income figure, but no satisfactory answer was ever given. (Tr. 83-84)

**Events of 2008-2009**

14. On July 11, 2008, IndyMac Bank was closed by the Office of Thrift Supervision and substantially all of its assets were transferred to IndyMac Federal Bank, FSB. (P.Ex. 6)

15. During that year, the Burkes repeatedly complained to IndyMac Federal that their

monthly payments were being placed in suspense, rather than applied towards the mortgage. (Tr. 51-52)

16. Also during this time, the Burkes applied for a loan modification, and were told that the borrower had to be three months in arrears in order to be eligible. (Tr. 54-55)

17. The Burkes withheld three monthly payments in accordance with those instructions, only to be told that the arrearage had to be paid in order to receive a modification; arrangements were made to pay the arrearage, but no modification was approved. (Tr. 54-55)

18. On March 19, 2009, IndyMac Federal was placed in receivership by the FDIC and substantially all of its assets were sold. (P.Ex. 6, p. 4). All deposits were transferred to OneWest Bank, F.S.B., but there is no indication whether OneWest acquired any other assets of IndyMac Federal, in particular the Burke Note or Deed of Trust. (P.Ex. 6).

19. On June 15, 2009, plaintiff Joanna Burke filed a lawsuit in Harris County small claims court complaining about the conduct of IndyMac Federal referred to in paragraphs 13 through 15; the case was removed to federal court and ultimately dismissed. (Tr. 56)

20. The Burkes made payments on the note through December 2009. The last time they attempted payment, the bank returned their check to them. (Tr. 37-38, 60-62)

**Events of 2010-2011**

21. By letter dated March 9, 2010, IndyMac Mortgage Services gave the Burkes notice of default, and opportunity to cure the default by April 10, 2010. (P. Ex. 4; Tr.50)

22. On December 6, 2010, the Burkes filed suit in Harris County District Court against

4

IndyMac Mortgage Services, Deutsche Bank, and Mortgage Electronic Registration Systems for breach of contract and predatory lending practices. (Cause No. 2010-79352, 133rd Judicial District Court). Following removal to this court, the case was dismissed by District Judge Lynn Hughes on March 3, 2011, subject to the condition that "if the case is re-filed, it must be re-filed in this court." (Tr. 57-58)

23. On January 20, 2011, Mortgage Electronic Registration Systems, Inc., acting as nominee for the lender IndyMac Bank, F.S.B., its successors and assigns, executed a document entitled "Assignment of Deed of Trust," purporting to assign all rights under the Burkes' loan agreement to Deutsche Bank. (P. Ex. 2)

24. The effective date of the purported assignment was backdated to April 9, 2010, one day prior to the default cure deadline set by the notice of default letter described above. (P. Ex. 2)

25. The language of the assignment, its signature block, and corporate acknowledgment repeatedly confirm the limited capacity in which the assignor was acting: "Mortgage Electronic Registration Systems, Inc., as nominee for, IndyMac Bank, F.S.B., its successors and assigns." (P.Ex. 2)

26. It is undisputed that IndyMac Bank, F.S.B. went defunct more than two years prior to this purported assignment. (P.Ex. 6)

27. IndyMac Bank's only successor was IndyMac Federal, which was also placed in receivership and sold nearly two years before this purported assignment. (P.Ex.6)

28. The "successors and assigns" to which the purported assignment refers are unknown, nor is there proof that MERS had an agency relationship with any such entity at the time the document was executed.

29. By letter dated February 10, 2011, a law firm representing a mortgage servicer gave the Burkes notice of intent to accelerate the maturity of the debt under the note. The letter stated that OneWest Bank, FSB was the mortgage servicer representing the mortgagee, Deutsche Bank. (P.Ex. 5)

30. The only authenticated version of the Burke note in the record contains no indorsement of any kind. (P. Ex. 3; Tr. 45-48)

31. The current owner or holder of the Burke note is unknown, because no evidence was offered or admitted on this issue.

32. An unbroken chain of title from the lender to plaintiff Deutsche Bank has not been established on this record.

## Conclusions of Law

1. Jurisdiction is based on diversity of citizenship, as there is complete diversity between the plaintiff and the defendants.

2. In determining whether a party is entitled to foreclose on a note, a federal court applies the substantive law of the forum state, in this case Texas. *Resolution Trust Corp. v. Starkey*, 41 F.3d 1018, 1023 (5th Cir. 1995).

**Validity of Home Equity Lien**

3.  The Burkes' loan was made pursuant to Art. XVI, Sec. 50(a)(6) of the Texas Constitution ("Texas Home Equity Amendment").

4.  The Texas Home Equity Amendment requires, among other things, that a lien created thereunder may be foreclosed upon only by a court order. TEX. CONST. Art. XVI, Sec. 50(a)(6)(D).

5.  Article XVI, Section 50 of the Texas Constitution imposes strict requirements for a valid homestead lien. Failure to comply with these requirements renders the lien invalid and unenforceable, unless and until the noncompliance is cured. *Wood v. HSBC Bank USA, N.A.*, 505 S.W.3d 542, 543 (Tex. 2016).

6.  Subsection 50(a)(6)(A) requires "a voluntary lien on the homestead created under a written agreement with the consent of each owner." There is no evidence that the lien on the Burkes' home was either involuntary, unwritten, or created without the Burkes' consent. No violation of this subsection was shown.

7.  Subsection 50(a)(6)(Q)(v) requires that "at the time the extension of credit is made, the homeowner shall receive a copy of the final loan application and all executed documents signed by the owner at closing related to the extension of credit." The Burkes received these documents four days after closing. (Tr. 79) Because there is no evidence that the extension of credit occurred before that date, no violation of this subsection was shown.

8.  The inclusion of false or even fraudulent employment income information in the final

7

loan application does not provide grounds to invalidate a home equity lien under the Texas Constitution.

9. Subsection 50(a)(6)(B) requires that the value of the total indebtedness not exceed 80% of the home total value. No violation of this subsection was shown.

10. Subsection 50(a)(6)(M)(i) requires that the loan must close no sooner than 12 days after the loan application. That requirement was satisfied here because the Burkes loan application was made on or about April 11, 2007, over a month before the closing. Although their initial application was turned down, it was later reactivated by the bank, and the Burkes' ratified that process by going forward with the loan transaction. The closing was the culmination of the same loan transaction initiated by the Burkes in April 2007.

11. Subsection 50 (a)(6)(M)(ii) now requires that the loan must close no earlier than one day after the homeowner receives a copy of the loan application. However, this provision was not in effect at the time the Burkes' loan was closed, and thus provides no basis to invalidate the lien. *See* TEX. CONST. art. 16, § 50, historical notes (citing Acts 2007, 80th Leg., H.J.R. No. 72).

12. The Burkes' challenges to the home equity lien as noncompliant with various provisions of the Texas Constitution are without merit.

**Invalidity of Assignment to Deutsche Bank**

13. A party seeking to foreclose on a home equity loan has the burden to demonstrate its authority to prosecute the foreclosure. TEX. R. CIV. P. 736.1(d)(3)(B) (petition must describe

"the authority of the party seeking foreclosure"); 736.6 ("the petitioner has the burden to prove by affidavits on file or evidence presented the grounds for granting the order").

14. Under the Texas Property Code, the only party entitled to initiate a non-judicial foreclosure sale is the mortgagee or the mortgage servicer acting on behalf of the current mortgagee. A "mortgagee" is defined as "(A) the grantee, beneficiary, owner, or holder of a security instrument; (B) a book entry system; or (C) if the security interest has been assigned of record, the last person to whom the security interest has been assigned of record." TEX. PROP. CODE § 51.0001(4).

15. When, as here, the party seeking to foreclose is not the original lender, that party must be able to trace its rights under the security instrument back to the original mortgagee. *See, e.g., Leavings v. Mills*, 175 S.W.3d 301, 310 (Tex. App.—Houston [1st Dist.] 2004, no pet).

16. Texas courts follow the majority rule that an obligor may defend against an assignee's efforts to enforce the obligation on any ground that renders the assignment void or absolutely invalid. *See Reinagel v. Deutsche Bank Nat. Trust Co.*, 735 F.3d 220, 225 (5th Cir. 2013) (citing *Tri-Cities Const., Inc. v. Am. Nat. Ins. Co.*, 523 S.W.2d 426, 430 (Tex. Civ. App. 1975); *Glass v. Carpenter*, 330 S.W.2d 530, 537 (Tex. Civ. App. 1959, writ ref'd n.r.e.).

17. Under Texas law, one method by which a party can establish its right to foreclose is to prove that it is the holder or owner of the note. *Miller v. Homecomings Financial, LLC*, 881 F. Supp. 2d 825, 829 (S.D. Tex. 2012).Deutsche Bank presented no evidence that it was the holder or owner of the Burke promissory note. The current holder or owner of the note

9

is unknown.

18. Under Texas law, an assignment is a manifestation by the owner of a right to transfer such right to the assignee. *Hermann Hosp. v. Liberty Life Assur. Co.,* 696 S.W.2d 37, 44 (Tex. App. – Houston [14th Dist.] 1985, writ ref'd n.r.e.). An existing right is a precondition for a valid assignment. *Pain Control Institute, Inc. v. GEICO Gen. Ins. Co.,* 447 S.W.3d 893, 899 (Tex. App. – Dallas 2014, no pet.). An assignee stands in the shoes of the assignor but acquires no greater right than the assignor possessed. *John H. Carney & Assocs. v. Texas Prop. & Cas. Ins. Guar. Ass'n,* 354 S.W.3d 843, 850 (Tex. App. – Austin 2011, pet. denied). An assignment cannot be made by a dead man; it is a transfer by one existing party to another existing party of some valuable interest. *Pool v. Sneed,* 173 S.W.2d 768, 775 (Tex. Civ. App. – Amarillo 1943, writ ref'd w.o.m.).

19. An agent is one who consents to the control of another, the principal, where the principal manifests consent that the agent shall act for the principal. *first Nat'l Acceptance Co. v. Bishop,* 187 S.W.3d 710, 714 (Tex. App. – Corpus Christi 2006, no pet.). Texas law does not presume agency, and the party who alleges it has the burden of proving it. *IRA Resources, Inc. v. Griego,* 221 S.W.3d 592, 597 (Tex. 2007).

20. A "nominee" is a kind of agent. *See* Black's Law Dictionary 1211 (10th ed. 2014) ("A person designated to act in place of another, usu. in a very limited way"). Under the deed of trust language, therefore, MERS is the "nominee" or agent for its principal IndyMac Bank. *Harris County v. MERSCORP Inc.,* 791 F.3d 545, 558-59 (5th Cir. 2015) (using the terms

'nominee' and 'agent' interchangeably when describing MERS' authority under typical deed of trust language).

21.    Under the Burkes' deed of trust, MERS had the authority as "beneficiary" to foreclose on the property or transfer its right to bring a foreclosure action to a new mortgagee by a valid assignment of the deed of trust. At the same time, the deed of trust recognized MERS's authority to act as agent on behalf of the lender. "In other words, because of the duality of the note and lien, it is possible that MERS could simultaneously be the principal of the lien and the agent of the lender who holds the note." *Harris County v. MERSCORP, Inc.,* 791 F.3d at 558-59.

22.    Under Texas law, there is a presumption that if an agent signs a contract for a disclosed principal, he does not intend to make himself a party to the contract. Unless an ambiguity is created by some contrary manifestation in the body of the instrument itself, parol evidence is not admissible to show that the agent is or the principal is not a party to the instrument. *Cavaness v. General Corp.,* 283 S.W.2d 33 (Tex. 1955); *Northern Propane Gas Co. v. Cole,* 395 F.2d 1, 4 (5th Cir. 1968); *Nishimatsu Constr. Co. v. Houston Nat'l Bank,* 515 F.2d 1200, 1207 (5th Cir. 1975); *Martin v. Xarin Real Estate, Inc.* 703 F.3d 883, 891 (5th Cir. 1983); 3 Tex. Jur. 3d Agency § 310 (June 2017 update).

23.    The purported 2011 deed of trust assignment to Deutsche Bank unambiguously shows that MERS was acting solely in its capacity as agent on behalf of a disclosed principal, IndyMac Bank, its successors and assigns. P.Ex. 2. Nothing in the body of the assignment

suggests that MERS intended to act as principal on its own behalf. Nor did the bank offer any parol evidence to contradict the unambiguous language of the assignment. Therefore, MERS was not a party to the 2011 assignment.

24. Because the language of the assignment is unambiguous as to the contracting parties, it made no difference that MERS possessed an interest in the subject matter of the assignment. *Cavaness,* 283 S.W.3d at 38. For the same reason, MERS did not become a party to the contract merely because its disclosed principal was a nonexistent corporation. *Id.* at 37.

25. IndyMac Bank was closed in 2008. Its successor was IndyMac Federal Bank, but that entity was likewise placed in receivership in March 2009, nearly two years before the 2011 assignment. P.Ex. 6. Substantially all of its assets were sold, but to whom they were sold, and whether the Burke note was among those assets, are matters of sheer speculation on this record. *See Priesmeyer v. Pacific Southwest Bank,* 917 S.W.2d 937, 940 (Tex. App. – Austin 1996, no writ) (refusing to presume that note once held by failed bank was among unspecified assets transferred to new bank). On this record, there was no existing "successor" to IndyMac Bank at the time of the 2011 assignment.

26. There is no evidence that, prior to being placed in receivership, IndyMac Bank or its successor IndyMac Federal Bank assigned the Burke note to anyone.

27. The purported assignment of January 20, 2011 is void and absolutely invalid for the following reasons: (A) the putative assignor, IndyMac Bank, F.S.B., had been defunct for

more than two years at the time of execution, and therefore had no legal existence or capacity to act; (B) the party executing the assignment, Mortgage Electronic Registration Systems, Inc., acted solely in its capacity as "nominee for IndyMac Bank F.S.B., its successors and assigns," not in its own behalf or any other capacity; and (C) the record does not reflect who the successors or assigns might be, whether they had any rights under the Burkes' note or security instrument, and if so how they obtained those rights.

28. Accordingly, the court concludes that neither Deutsche Bank nor any mortgage servicer acting on its behalf has the right to foreclose on the Burkes' Kingwood residence.

29. The court further concludes that at no time has Deutsche Bank possessed any right, title, or interest in the Burkes' note and security interest executed on May 21, 2007.

Signed at Houston, Texas on December 21, 2017.

_____
Stephen Wm Smith
United States Magistrate Judge

13